UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sun Valley, Ltd.,

    Plaintiff,

Case No. 13-13641

Honorable Nancy G. Edmunds

v.

Galyan's Trading Company, LLC, d/b/a
Dick's Sporting Goods,

    Defendant.

_____/

**ORDER AND OPINION GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS [9]**

In this commercial lease breach of contract/declaratory judgment suit, Plaintiff Sun Valley seeks to recoup rent to which it argues it is entitled from Defendant Galyan's Trading Company and requests that the Court declare that Defendant owes full rent as provided for in the lease.

Plaintiff owns and leases out space in a shopping mall center, Fountain Walk Center, in Novi, Michigan. Since 2001, Defendant has leased space at the shopping mall, operating a Dick's Sporting Goods.

The parties' dispute arises from a cotenancy provision in the governing lease. The cotenancy provision triggers an increase in rent when the lease's "Major Anchor," a theater, and seventy-five percent of Fountain Walk's space is occupied with the stated types of lessees. The dispute centers on whether Plaintiff has satisfied the "Major Anchor" provision in the lease. The lease defines "Major Anchor" as a Sears Great Indoors store. There is no dispute that a Sears Great Indoors once operated at Fountain Walk but no longer does.

Instead, a Sears Outlet now operates in the space. Plaintiff argues that it has satisfied the cotenancy requirement, because Sears Outlet satisfies the "Major Anchor" provision. Defendant argues that the lease is clear and that the "Major Anchor" can only be Sears Great Indoors and that Sears Outlet does not satisfy the cotenacy requirement and therefore does not trigger the rent increase.

Before the Court is Defendant's motion for judgment on the pleadings. (Dkt. 9.) Because the Court finds that the lease is unambiguous and requires a Sears Great Indoors store to be operating at Fountain Walk, and one is not, the Court GRANTS Defendant's motion.

**I.  Facts**

On April 10, 2001, PLC Novi West Development, LLC, Plaintiff's predecessor, entered into a lease with Defendant. (Pl.'s Resp., Ex. 1, Lease.) The lease was for space in a shopping center, titled "Fountain Walk Center," in Novi, Michigan. (*Id.*) Defendant leased, and continues to lease, the space for a Dick's Sporting Goods store.

Defendant's responsibilities to pay rent began on the "Rent Commencement Date" as set forth in the lease. (Pl.'s Resp., Ex. 1, Lease.)

The lease provided that, if Plaintiff did not satisfy the cotenancy requirement after the rent commencement date, then Defendant could pay a reduced amount of rent. The lease defines the "Cotenancy Requirement" as the satisfaction of three elements:

(i) The Major Anchor shall be operating in at least one hundred thousand (100,000) square feet of Floor Area using its then latest concept under the name "Sears Great Indoors";

(ii) An Acceptable Theater shall be operating in the Project; [and]

    (iii)    At least seventy-five percent (75%) of the Floor Area of the Project shall be operating and open for business (excluding Tenant's Building and pad areas remote from the main area of the project, which areas constitute approximately 20,000 square feet of leasable space), include (A) a minimum of four (4) quality sit down (non "fast food") restaurants of at least five thousand (5,000) square feet of Floor Area each, and (B) at least one of either Building C-West of Building C-East, as shown on the Site Plan, is fully occupied and operating with a single tenant or multiple tenants.[1]

The lease states that "'Major Anchor' means a Sears Great Indoors containing at least one hundred thousand (100,000) square feet of Floor Area." (Lease at 7.)

The lease next addresses the cotenancy requirement in the "Term" section of the lease. In section 3.05, Plaintiff represents, at the time of the contract, that Plaintiff had entered into a lease agreement with Sears for a Sears Great Indoors store and that it had also entered into a lease agreement for a movie theater, both for fifteen-year terms. (Lease at 15, Section 3.05). This section of the lease therefore indicates that Plaintiff, at the time of the lease's signing, had plans in progress to satisfy the first two elements of the cotenancy requirement. The second section of 3.05 indicates that, if Plaintiff fails to satisfy

---

[1] On October 1, 2002, PLC Novi and Defendant entered into a lease modification agreement that modified the third paragraph of the cotenancy requirement. (Pl.'s Resp., Ex. 2.)

the cotenancy requirement, then Defendant is entitled to pay a significantly reduced rent.[2] (*Id.*)

In January, 2011, Plaintiff purchased Fountain Walk. (Pl.'s Resp., Ex. 3, Spigel Aff. ¶ 4.). Plaintiff suggests that the cotenancy requirement's purpose is to have the landlord populate the mall with tenants so that Defendant will benefit from the increased foot traffic, customers, and sales that are generated by the other tenants. (*Id.* ¶ 7.)

On April 1, 2013, Plaintiff notified Defendant that Plaintiff had secured enough tenants in the mall to trigger the cotenancy requirement. (Spigel Aff. ¶ 8.) Plaintiff also informed Defendant that that triggering required Defendant to begin paying $84,000.00 per month in rent. (*Id.*)

Plaintiff states that Fountain Walk's anchor tenant is Sears. (Spigel Aff. ¶ 9.) Plaintiff adds that Sears has been the anchor tenant since December, 1999. (*Id.*) Plaintiff explains that the Sears Lease requires that Sears open and operate, for at least one day, a store called "Great Indoors." (*Id.* ¶ 10.)

---

[2](a) Landlord represents and warrants that it has entered into lease agreement or operating agreements including operating covenants with (i) Sears, Roebuck and Co. for the operation of a Sears Great Indoors Store in at least one hundred thousand (100,000) square feet of Floor Area, and (ii) an Acceptable Theater; in the locations shown on the Site Plan, for terms expiring no sooner than fifteen (15) years.

(b) If the Cotenancy Requirement is not met following the Rent Commencement Date, Tenant shall thereafter have the right to pay in lieu of Rent the lesser of (i) two percent (2%) of Gross Sales monthly in arrears or fifty percent (50%)of the monthly Base Rent, whichever is less; provided, however, that if such condition exists for over eighteen months, Tenant shall have the right to terminate this Lease at any time thereafter by giving written notice to Landlord.

Plaintiff states that Sears operated a Great Indoors store since Sears entered into the lease until June 16, 2012. (Spigel Aff. ¶ 11.) Plaintiff explains that Sears, in 2012, closed all of its stores operating under the "Great Indoors" name. (*Id.*) Plaintiff then says that Sears reopened some of the stores as "Sears Outlet" stores. (*Id.*) Sears reopened its space at Fountain Walk as a Sears Outlet around September 26, 2012. (*Id.*) Sears has operated its Sears Outlet at Fountain Walk ever since. (*Id.*) Plaintiff states that no Great Indoors stores exist anymore. (*Id.*)

Plaintiff states that it has met all the requirements of cotenancy under the cotenancy requirement. (Spigel Aff. ¶ 15.)

Plaintiff represents that Defendant, since March, 2011, has been paying the reduced rate of $23,000.00 per month, when it should be paying $84,000.00. (Spigel Aff. ¶ 18.)

## II. Standards

### A. Rule 12(c) motion for judgment on the pleadings standard

At any time after the pleadings close, but before trial commences, a party may move for a judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). The standard of review is the same *de novo* standard applicable to a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001).

The Court reviews the motion in a light most favorable to the plaintiff, assumes that the plaintiff's factual allegations are true, and determines whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Id.* This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Court need not accept

as true legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

If the court, however, considers matters outside the pleadings, it must treat the motion as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See Rubin v. Schottenstein, Zox, & Dunn*, 110 F.3d 1247, 1253 (6th Cir. 1997).

### B. Rule 12(b) motion to dismiss standard

The Sixth Circuit recently noted that under the United States Supreme Court's heightened pleading standard laid out in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Estate of Barney v. PNC Bank, Nat'l Assoc.*, 714 F.3d 920, 924-25 (6th Cir. 2013) (internal quotations and citations omitted). The court in *Estate of Barney* goes on to state that under *Iqbal*, "[a] claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citations omitted). Furthermore, "[w]hile the plausibility standard is not akin to a 'probability requirement,' the plausibility standard does ask for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). If the plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Finally, the Court must

always keep in mind that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555.

### C. Rule 56 motion for summary judgment standard

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III. Analysis

Defendant has filed a motion for judgment on the pleadings. (Def.'s Mot. for J.) Defendant argues that because a Sears Great Outdoors store is not at Fountain Walk, that Plaintiff has not met the cotenancy requirement and, because Plaintiff has not met the requirement, that Defendant is entitled to pay reduced rent. (*Id.*)

Plaintiff responds that it has either fully performed the cotenancy requirement or that it has substantially performed the cotenancy requirement so that Defendant must pay full rent. (Dkt. 15, Pl.'s Resp. at 9-10.) Plaintiff alternatively argues that the lease is ambiguous. (*Id.* at 16.) Plaintiff also maintains that Defendant's position would result in a forfeiture, which Michigan Law disfavors, and asserts the traditional defense of impracticability, because no Sears Great Indoors stores exist. (*Id.* at 23-24.)

**A. The lease is clear and unambiguous**

The Court starts with interpretation of the lease to determine what the lease requires of each party before the cotenancy requirement is triggered.

Contract interpretation's purpose is to understand the parties' intent in forming the contract. *Shay v. Aldrich*, 790 N.W.2d 629, 637 (Mich. 2010) (citation omitted). If a contract's language is unambiguous, the court enforces the contract as written. *Id.* (citation omitted). If a contract's language is ambiguous, that is, when two provisions irreconcilably conflict with each other or when a term is equally susceptible to more than one meaning, then a court looks to outside, or extrinsic, evidence, to determine the parties' intent. *Id.* (citation omitted), *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 543 (Mich.Ct.App. 2007) (citations omitted).

Here, the lease is clear. To satisfy the cotenancy requirement, Plaintiff must be operating the Sears Great Indoors store as the "Major Anchor." The lease does not indicate or provide for the substitution of a different Sears store. Defendant is correct that, in three spots, the lease states that "Sears Great Indoors" is the "Major Anchor." The lease is explicit, it defines "Major Anchor" as a "Sears Great Indoors Store." (Lease at 7.) The lease defines "Cotenancy Requirement." (Lease at 3.) The cotenancy requirement's first

element is that "[t]he Major Anchor shall be operating in at least one hundred thousand square feet . . . using its then latest concept under the name "Sears Great Indoors." (*Id.*) And finally, the lease states in Section 3.05 that Plaintiff would satisfy the cotenancy requirement when, in part, Plaintiff "represents and warrants that it has entered into lease agreement or operating agreements including operating covenants with (i) Sears, Roebuck and Co. for the operations of a Sears Great Indoors Store in a least one hundred thousand . . . square feet[.]" (Lease at 15.)

### B. The lease contemplates and requires a Sears Great Indoors store

Plaintiff argues that the parties' intent in drafting the lease "was to ensure that Sears would be the anchor tenant at Fountain Walk, attracting customers and generating foot traffic and shoppers at the [m]all who would in certain percentages stop and shop, and most importantly generate sales, at Dick's." (Pl.'s Resp. at 11, emphasis removed.)

Plaintiff maintains that it has satisfied the cotenancy provision's elements. (Pl.'s Resp. at 13.) It states that it has done so by having the Sears Outlet stand in the place of Sears Great Indoors and asserts that it has met the other elements necessary to increase foot traffic and trigger full rent payment. (*Id.*) Plaintiff says that the fact that Sears had put a Sears Outlet in the mall does not change the lease's terms. (*Id.*)

The Court rejects Plaintiff's argument that Plaintiff can simply substitute "Outlet" for the lease's "Great Indoors" requirement. The lease is clear. Under the lease's terms, only a Sears Great Indoors store triggers the cotenancy requirement. The Court reads the terms of the lease as the terms appear on the lease's pages. Reading the lease's unambiguous provisions, there is no support that a Sears Outlet store satisfies the cotenancy requirement.

**C. The "using its then latest concept" language is not ambiguous**

Plaintiff next advocates that the lease is ambiguous, looking at the "using its then latest concept" language. (Pl.'s Resp. at 14.) The full sentence appears in the section that states how the cotenancy requirement is triggered. The "Cotenancy Requirement"'s first element is that "[t]he Major Anchor shall be operating in at least one hundred thousand square feet . . . using its then latest concept under the name "Sears Great Indoors." (Lease at 3.) Plaintiff argues that the "using its then latest concept" language is the operative language in the phrase. (Pl.'s Resp. at 14.) Plaintiff urges the Court to look at the lease through the lens of the facts as they existed in 2001. (*Id.* at 15.) Plaintiff suggests that the "Cotenancy Requirement mandates Sears' latest concept be the anchor tenant at Fountain Walk, accurately named by the contract at the time as Sears 'Great Indoors.'" (*Id.* at 14-15.) Following that argument, Plaintiff further suggests that the cotenancy requirement is satisfied so long as Sears' "then latest concept" is occupying the major anchor space. (*Id.* at 15.) Plaintiff maintains that Sears Outlet is Sears' latest concept and therefore satisfies the lease's major anchor requirement. (*Id.*)

Defendant states that Plaintiff's "latest current concept" argument lacks merit. (Def.'s Reply at 7-8.) Defendant argues that "[t]he only reasonable interpretation of the phrase 'then latest concept' is that it was used merely to describe what a 'Sears Great Indoors' store was, *i.e.*, it was Sears' latest concept store at the time the parties entered into the [l]ease." (*Id.* at 8.)

The Court agrees with Defendant. Reading the entire sentence together, "using its then latest concept" is tailored by the "under the name 'Sears Great Indoors'" language.

This second part of the sentence emphasizes and further restricts the "then latest concept" language and expressly limits the occupation of the space to Sears Great Indoors.

### D. The "Cotenancy Requirement" usages in the lease do not create an ambiguity

Plaintiff argues that two patent ambiguities exist in the lease.[3] (Pl.'s Resp. at 16.) A patent ambiguity exists "if the uncertainty as to the meaning appears on the fact of the instrument, and arises from the defective, obscure, or insensible language used." *In re Butterfield's Estate*, 275 N.W.2d 262, 266, n. 6 (Mich. 1979).

Plaintiff argues that the first patent ambiguity exists because the terms of the cotenancy requirement definition and the cotenancy requirement provision in section 3.05 conflict. (Pl.'s Resp. at 16.)

Plaintiff states that the cotenancy requirement definition states that "The Major Anchor **shall be operating** in at least one hundred thousand . . . square feet of Floor Area using its then latest concept under the name 'Sears Great Indoors.'" (Pl.'s Resp. at 17.) Plaintiff argues that this definition conflicts with Section 3.05's definition because Section 3.05 states, "Landlord represents and warrants that it has **entered into lease agreements** or operating agreements including operating covenants **with (i) Sears, Roebuck and Co. for the operation of a Sears Great Indoors Store**[.]" (*Id.*) Plaintiff suggests that the two provisions conflict because the definition requires Sears to be operating, while Section 3.05 "merely" requires a lease. (*Id.*)

---

[3]In its response, Plaintiff asserts that both patent and latent ambiguities exist in the lease. But Plaintiff solely presents argument as to patent ambiguities.

11

Plaintiff is incorrect. Defendant recognizes Plaintiff's error. (Def.'s Reply at 5-6.) The definition and Section 3.05 do not conflict, they address two different things. The cotenancy requirement definition lists what Plaintiff must do to satisfy the requirement– Plaintiff must be, some time in the future, operating a Sears Great Indoors Store. Section 3.05, by contrast, is a statement that the Landlord/Plaintiff makes at the time of the contracting–Landlord represents that it has entered into two longer term leases with Sears and a theater.

The two uses of "cotenancy requirement" do not conflict, there is no patent ambiguity in this section.

Plaintiff then argues that another ambiguity exists "when the definition of Major Anchor is combined with the definition of cotenancy requirement." (Pl.'s Resp. at 17.) Plaintiff states that the lease defines "Major Anchor" as "Sears Great Indoors Store containing at least one hundred thousand . . . square feet of Floor Area." (*Id.* at 17-18.) Plaintiff states that, "[w]hen [the "Major Tenant" definition is] plugged into the definition of Cotenancy Requirement, it reads 'The Sears Great Indoors Store containing at least one hundred thousand [] square feet of Floor Area shall be operating in at least one hundred thousand [] square feet of Floor Area using its then latest concept under the name 'Sears Great Indoors.'" (*Id.* at 18.) Plaintiff suggests that "[t]he repetitive nature of this definition highlights an ambiguity with respect to the term Sears "Great Indoors." (*Id.*)

The Court rejects this argument. The slight repetitive nature of the statement, when mangled into Plaintiff's argument, does not render the statement ambiguous.

**E. Because the lease expressly requires a Sears Great Indoors as a condition to satisfying the Cotenancy Requirement, substantial performance of the lease cannot satisfy the condition**

12

Plaintiff argues that, even if the lease requires a Sears Great Indoors store, it has substantially performed the lease and therefore that it is entitled to full rent payment from Defendant. (Pl.'s Resp. at 18.) Defendant argues that Michigan's substantial performance doctrine does not apply and that the presence of a Sears Great Indoors store was a condition precedent to the cotenancy requirement satisfaction. (Def.'s Reply at 9.)

"Michigan follows the substantial performance of contract rule." *Gibson v. Group Ins. Co.*, 369 N.W.2d 484, 486 (Mich.Ct.App. 1985). "A contract is substantially performed when all the essentials necessary to the full accomplishment of the purposes for which the thing contracted has been performed with such approximation that a party obtains substantially what is called for by the contract." *Id.*

"Generally speaking, deviations from the absolute terms of a contract do not necessarily cause a failure of performance, but may entitle a party to extra compensation or damages. Imperfections in the matters of details which do not constitute a deviation from the general plan do not prevent the performance from being regarded as substantial performance. On the other hand, where the deviations or alterations are such as would essentially change the terms of performance, they will be considered as a failure of performance." *Gibson*, 369 N.W.2d at 484 (citations omitted).

Whether a party has rendered substantial performance of a contract is generally a question of fact. *In re American Cas. Co.*, 851 F.2d 794,798 (6th Cir. 1988) (citations omitted). But, when there is no genuine issue of material fact, then a court may rule on summary judgment. *See Jenkins v. U.S.A. Foods, Inc.*, 912 F.Supp. 969, 974 (E.D.Mich. 1996) (finding that no rational trier of fact could find that the defendant did not substantially

perform the contract and therefore granting summary judgment on the substantial performance claim.).

Defendant argues that substantial performance does not apply here because Plaintiff has not satisfied the essential terms of the lease. (Def.'s Reply at 9.) Defendant maintains that the operation of the Sears Great Indoors is a condition precedent to triggering the cotenancy requirement.

The Court agrees with Defendant. Here, the lease is clear, to trigger the cotenancy requirement, a Sears Great Indoors must be operating at Fountain Walk. That requirement is an express condition.

A condition precedent is "a fact or event that the parties intend must take place before there is a right to performance." *Real Estate One v. Heller*, 724 N.W.2d 738, 741 Mich.Ct.App. 2006) (citations omitted). "A condition precedent is distinguished from a promise in that it creates no right or duty in itself, but is merely a limiting or modifying factor." *Id.* (citations omitted). Courts, though, "are not inclined to construe stipulations of a contract as conditions precedent unless compelled by the language in the contract." *Id.* (citations omitted).

The lease defines cotenancy requirement as the culmination of three events occurring. (Lease at 3.) The lease, in Section 3.05, contemplates the fact that the contenancy requirement would not be met. Section 3.05 provides that, if the cotenancy requirement is not met, then Defendant is entitled to pay a reduced rent. (*Id.* at 15.)

As Defendant stresses, the lease explicitly requires a Sears Great Indoors. Because the lease requires the Great Indoors, the Court cannot inquire as to whether any substantial performance would fulfill the lease. *See Peach v. Ultramar Diamond Shamrock*, 229

14

F.Supp.2d 759, 771-72 (E.D.Mich. 2002) (citing Restatement (Second) of Contracts, § 237, cmt. d (1981).)[4] ("Although the doctrine of substantial performance does provide relief for plaintiffs in certain contractual disputes, it applies only when (1) the breach is not material and (2) the contract does not explicitly require the obligation that was breached.).

### F. Failure to satisfy the cotenancy requirement is not a forfeiture

Plaintiff argues that Defendant is asking the Court to enforce a substantial forfeiture against Plaintiff. (Pl.'s Resp. at 23.) Plaintiff states that Defendant should be paying $42,000.00 more per month in rent. (*Id.*)

Defendant argues that the Plaintiff is not asserting the loss of a right, because Plaintiff was never entitled to the full rent. (Def.'s Resp. at 12-13.)

The Court again agrees with Defendant, there is no forfeiture clause in the lease and enforcing the contract as written would not render a forfeiture upon Plaintiff.

A forfeiture clause is "[a] contractual provision stating that, under certain circumstances, one party must forfeit something to the other." Black's Law Dictionary (9th ed. 2009). "Forfeiture clauses are often held to be void[.]" (*Id.*) As Plaintiff suggests,

---

[4]Restatement (Second) of Contracts, § 237, comment d, provides:
> In an important category of disputes over failure of performance, one party asserts the right to payment on the ground that he has completed his performance, while the other party refuses to pay on the ground that there is an uncured material failure of performance. . . . The considerations in determining whether performance is substantial are those listed in § 241 for determining whether a failure is material. [] If, however, the parties have made an event a condition of their agreement, there is no mitigating standard of materiality or substantiality applicable to the non-occurrence of that event. If, therefore, the agreement makes full performance a condition, substantial performance is not sufficient and if relief is to be had under the contract, it must be through excuse of the non-occurrence of the condition to avoid forfeiture.

"[f]orfeitures are not favored in law, and, while they may be contracted for, the provisions of contracts relied upon to establish them must be clear and unequivocal." *Bilandzija v. Shilts*, 54 N.W.2d 705, 707 (Mich. 1952).

No forfeiture clause exists in the lease. There is no right contracted for that Plaintiff must forfeit. The lease contains a provision, the contenancy requirement, which is unfavorable to Plaintiff, but Plaintiff was never guaranteed the benefit of full rent. The lease provides that Plaintiff would receive full rent from Defendant only upon the cotenancy requirement's satisfaction. The original parties should have anticipated the fact that the Major Anchor could have failed. They should have provided for the possibility of a change in the Major Anchor. But they did not. And the Court will not rewrite the lease. The lease is clear.

Plaintiff points to *Jenkins v. U.S.A. Foods, Inc.*, 912 F.Supp. 969, 973 (E.D.Mich. 1996) (Feikins, J.), to support his argument that, if Defendant does not pay full rent, then the situation would amount to a forfeiture. Defendant points out that *Jenkins* is distinguishable. The Court agrees. In *Jenkins*, the court noted that the defendant had defaulted under a one million dollar promissory note by making payment several days late and the plaintiff sought to forfeit the defendant's right, the right to pay off the loan in five years, by accelerating the owing amount due. The court found that the payment by a precise deadline was not a critical element of the parties' agreement and that no material breach occurred when the payment arrived a few days after the grace period. *Jenkins*, 912 F.Supp. at 974. The court found that the defendant had substantially performed the promissory note and that forfeiting the defendant's right to pay off the loan in five years because of a delay in one payment was unduly harsh. *Id.*

Unlike *Jenkins*, as discussed above, Plaintiff had no right to which it was entitled that it has to forfeit. No forfeiture clause exists in the lease.

The Court rejects this argument.

**G. The lease is neither impracticable nor impossible**

Plaintiff argues that the doctrine of impracticability excuses Plaintiff from having a Sears "Great Indoors" at Fountain Walk. (Pl.'s Resp. at 24.) Plaintiff states that, in 2012, Sears closed all of its stores that operated as "Great Indoors," including the one at Fountain Walk. (*Id.*) Plaintiff asserts that Sears reopened some of those closed stores as Sears Outlet stores, including the one at Fountain Walk. (*Id.*) Plaintiff maintains that, since Sears closed all of the Great Indoors, it is not possible for Sears to operate a Great Indoors at Fountain Walk. (*Id.* at 24-25.) Plaintiff suggests that the cotenancy requirement contains the implicit condition that a Sears Great Indoors actually exists. (*Id.* at 26.) Plaintiff further argues that the "parties could not have anticipated or contemplated that all Sears 'Great Indoors' stores would close and cease to exist, thus making it impossible to satisfy each and every explicit term of the Cotenancy Requirement." (*Id.*) Plaintiff claims that an unjust result would occur if the Court accepts Defendant's reading of the lease, and that Plaintiff should not have to give up the $61,000.00 per month that it alleges "is rightfully owed." (*Id.*)

Defendant maintains that the impossibility/impracticability is a defensive doctrine that relieves or excuses a party from performing contractual obligations due to unforeseeable events. (Def.'s Reply at 14.) Defendant also maintains that Plaintiff cannot show that the closing of Sears Great Indoors was not a reasonably foreseeable event. (*Id.* at 15.)

17

"The question of whether a promisor's liability is extinguished in the event his contractual promise becomes objectively impossible of performance may depend upon whether the supervening event producing impossibility was or was not reasonably foreseeable when he entered into the contract. Risk of nonperformance of a contract should not fairly be thrown upon the promisor, if an unanticipated circumstance had made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract." *Vergote v. K Mart Corp.*, 404 N.W.2d 711, 717-18 (Mich.Ct.App. 1987) (citation omitted).

Even if the Court were to find that Plaintiff could assert the traditional affirmative defense of impracticability, the Court would still find that Plaintiff could not assert it. Here, the Court agrees with Defendant–the fact that the "Major Anchor" of Fountain Walk, specifically defined as a Sears Great Indoors, would fail, the fact that any business would fail, is foreseeable. *See Karl Wendt Farm Equip. Co. v. Int'l Harvester Co.*, 931 F.2d 1112, 1116-17 (6th Cir. 1991) ("[E]conomic unprofitableness [] is not the equivalent to impossibility of performance." "Subsequent events which in the nature of things do not render performance impossible, but only render it more difficult, burdensome, or expensive, will not operate to relieve [a party of its contractual obligations]."). While conducting its research on this case, the Court found many examples of commercial leases such as the one at issue here that had cotenancy requirements and major anchor or tenant designations. The difference in some of those cases is that those leases addressed the possibility of the failure of the major tenant and provided that an "equivalent" major tenant

could act as a substitute for the cotenancy requirement.[5]  The Court finds no such substitution provision in the lease.  Nor is the Court inclined to find that the lease is impossible or impracticable to perform.  To be sure, the lease is less profitable to Plaintiff, but profitability does not make a lease impossible/impracticable.  *See Capital One Bank USA N.A. v. Ponte*, 307664, et al., 2013 WL 6692511, at *10 (Mich.Ct.App. Dec. 19, 2013) (citations, quotation marks, and brackets removed.) ("While a supervening event's lack of foreseeability may produce an impossibility sufficient to extinguish liability . . . subsequent events which in the nature of things do not render performance impossible, but only render it more difficult, burdensome, or expensive, will not operate to relieve a party of its contractual obligations.").

The Court therefore rejects Plaintiff's impossibility/impracticability argument.

### IV.  Conclusion

For the above-stated reasons, the Court GRANTS Defendant's motion for judgment on the pleadings.

                                              s/Nancy G. Edmunds  
                                              Nancy G. Edmunds  
                                              United States District Judge

Dated:  March 17, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 17, 2014, by electronic and/or ordinary mail.

                                              s/Johnetta M. Curry-Williams  
                                              Case Manager  
                                              Acting in the Absence of Carol A. Hemeyer

---

[5] Searches of "major tenant," "anchor tenant," and "cotenancy requirement" provided ample results.